I would like to reserve two minutes of my time for a moment. The board denied my client's motions to reopen based on two reasons. That she failed to submit material evidence of changed country conditions, and that the that she is an objectively reasonable, well-founded fear of future persecution. Therefore, the issues in this case are twofold. What is material evidence? And what is prima facie evidence of an objectively reasonable, well-founded fear of future persecution? I'll just note that the board conflated these two issues into one and did not separately address each requirement. Beginning with evidence submitted in the record. According to both motions to reopen, Ms. Rodas submitted evidence that she suffered past persecution on account of a protected ground. She submitted evidence there that she has individualized risk of a future harm on account of a protected ground based on having received a direct threat of future harm. She submitted generalized country conditions evidence in Guatemala showing that the government is unwilling and unable to protect her from the harm that she fears. Did any of the evidence show a change in country conditions with respect to Guatemala's willingness to address domestic violence? Yes, Your Honor. The country conditions evidence showed that there was an increase in the number of violent cases in Guatemala from the time of her initial case to the time of the filing of the motions to reopen. The country conditions evidence shows there's an increase in the brutality of the violence against women from the time of her initial proceedings to the time of the motions to reopen. The evidence showed there was two-tieth increases in violence and brutality that Guatemala had seen international attention in other countries and raised concerns about the increase in violence and that there had been a negative reaction to the government's attempt to control the violence within the country, showing further unwillingness and unable to control it. Thank you. I cannot even respond to the argument that's being made by the government that the short reason Ms. Lopez's ex-husband stopped his case is because she loved him, not because he feared the police in the United States. I believe that the answer to that question must go to what was the direct threat he made. What is the threat in the record? In the First Violence Declaration, which was submitted with the second motion to reopen, I'm sorry, with her daughter's declaration, which is in AR-56, she states that he specifically says that he can't, he couldn't harm her there, but he could harm her here in Guatemala. And if the laws don't protect her here in Guatemala, then when she comes back, she will still be my wife and she will have to explain that I won't kill her. I believe that much shows that this idea that he didn't harm her because she was protected by the laws is exactly what he said. And I mean, the fact that she's no longer married to her ex-husband, does that affect her eligibility for asylum based on her protective status? It does not. The reason it does not is because the country conditions of it shows that she has no protection due to the fact that they're being divorced. Now the country conditions of it shows that the domestic relationship doesn't end upon divorce in the eyes of the persecutor. He still will have impunity over any harm that he potentially will inflict upon her. Further, his statement that he's amazed that she is still married to be here in Guatemala indicates that he does not consider the divorce a reason to stop harming her. But is it true, am I correct, that the Borg's position, the Borg's litigation failed in 2012, over five years ago? Is that correct? There are two court decisions, there are two motions failed before this court. One was denied in 2010 and one was denied in 2012. That is correct, Your Honor. Is there any reason why it's been five years before the end of this hearing from the Borg? Is that normal in your experience? In my experience, basically not. It's approximately the normal time of ending cases. Do you evaluate on proffer that country conditions now have changed? Say that you were given the right to reopen. Do you think you have specific evidence that would show that there's different country conditions now than applied back in 2010 or 2012? No. If anything, the country conditions in Guatemala would continue to worsen. But you're representing, you'd be able to introduce evidence to that effect. I believe so, Your Honor, yes. Thank you. So, basically, the government is challenging or I think is saying that your client has been able to introduce previously unavailable material evidence. That's one reason why they think the PIA denied appropriately the proposal to reopen. And then the failure to establish a primary accreditation, they should repeat the primary accreditation for the release to be sought. So, just to summarize, what's your best arguments to both of those? Well, as is materiality. Materiality requires that the evidence relate to the applicant. And there are two requirements in the motion to reopen regulations. Materiality and previously unavailable evidence of the past touristy commusion is material to the claim. It shows that she suffered past persecution when held to the wealth of a protected ground. That is not that the evidence is previously unavailable. The previously unavailable evidence were the driving threats of nature. Therefore, I think that's your best argument. As to the privatization standard, it's clear on the decisions that the board did not address these cases, did not apply these cases using a privatization standard. In the 2010 decision, the court says that she has not demonstrated she has a well-founded fear of future persecution. In the 2012 decision, the disciplinary says that she, the respondent, has not demonstrated that she has a well-founded fear. The standard for a privatization case is whether she has reasonable grounds to prevail on her claim. Not whether she has established her claim, but whether she has reasonable grounds, whether she has submitted direct and specific evidence in support of her claim. The board went to the ultimate conclusion, without does she have a well-founded fear, and therefore the board erred and did not adjudicate this case using a privatization standard. Thank you, Your Honor.  I am pleased to be here. My name is Lance Gell. I represent the respondent for the United States Attorney General. The board acted within its broad discretion in determining that the petitioner failed to meet her burden of establishing a privatization case for a link with her motions to reopen. The alien must proffer, in part, sufficient evidence to demonstrate a reasonable likelihood of success on the marriage, so as to make it worthwhile to develop the issues. Further, there is full evidence herein hearing. Why don't you start with the last argument made here by Ms. Holbrook, that it appears that the BIA may have gone right to the ultimate legal conclusion and not used the appropriate standard for evaluating a privatization case. To the extent it may have been in our data, it may have understood that it was a promiscuous finding. Should we involve the 2010 and 2012 decisions? Well, that seems critical. We're reviewing a case that we show that we understand the proper standard to review. It seems like it would be equally critical for the BIA to do the same. And when you say they did, what's your proof that they did? The language of their decision. The language of their decision. And that's why I'm asking you this question. It seems to, or there's an argument that can be made, it seems to look like they evaluated in terms of the ultimate conclusion. I just wanted to know what your best response was to that. It emphasized the connotation aspect throughout its opinion, and so it actually, where it emphasizes the connotation aspect, it's on page 470 of the record. First, it says she has not submitted material evidence that she is private financially eligible for asylum. And then it goes on, and we conclude again by paragraph, although we acknowledge that there is likely more protection from domestic abuse in the United States than in Guatemala. Her response to evidence is insufficient to prima facie and establish a law of family fear, particularly concerning the lack of farm from 1993 to 2009. So she shows her declaration indicates, which is not a counterargument, that she is a threat. Country conditions show that victims of domestic violence are protected in Guatemala, and there's evidence that there are changed country conditions for the worst. What is the prima facie case? You said a lot in that question.  From how I read the evidence, there may have been an uptick in the numbers of domestic violence, but experts that she submitted said it's because there's more notice, more freedom to make claims, and there's more recognition of the claims. And if anything, the conditions in Guatemala have improved, even if it's slightly, as to protections against domestic violence victims in the United States. This is a claim. It is dated but has the latest as of those motions to reopen. Additionally, the motion to reopen was filed in 2011, I believe. The country conditions that she submitted are pretty generalized as to victims of domestic violence, and they're not particularized to victims who have been able to divorce their abuser. Well, do you dispute the representation that counsel made that the conditions have gotten worse? She would be able to show, if there was freedom, then she could show the conditions wouldn't have gotten worse? You know, I don't want to go too far afield of what the board found, and the board's emphasis was the gap where they both lived in the United States and there was no abuse. And for that reason, the board found that she did not establish prima facie eligibility. But she didn't face her claim towards the objective in the future of her persecution on Puebla in the United States. She said she had to threaten. One of the evidence that was that he felt more free and was able to abuse her when he did that. The first time that I heard about her motion to reopen, I realized the board has a lot of discretion. But on the other hand, to reject it just because she hasn't made a prima facie case seems a little bit of a distraction. Well, we acknowledge that he has certain, and he framed them before they even left Guatemala. And even though they were in the United States, he repeatedly accused her. He beat her on public in January of 1993 and fled before the police could arrive. She was beaten again by him, and the police took her to the police department again. And again in July of 1993, he beat her again. How does that help you? It helps because the abuse stopped once she left. Well, you argue that not because he was afraid of police in the United States, but you only cite two sources in the record for support, the PIA decision and Lopez's affidavit. But I'm not sure how these sources support your argument. I don't think it was Lopez that did. Unless you go back to the affidavit where she said that, and the PIA decision, I'm not quite sure what interrogated it. You just started to do the PIA decision, but I'm not quite sure what interrogated it. It seems like all the evidence seems to support that it was because she was afraid, because she was afraid of the police in the United States. I knew it. But the fact that the beating stopped after she left and not because of the police is support for explaining that the 16 years of not being harmed by you supports the conclusion that she was out of her face and eligible for complete, they even went through divorce proceedings in 2005, and there's no indication that there was any threat or violence in that time either. It's just, as far as her returning to live with him, it's just fully speculative. There's nothing in the record that indicates that a quaternionologist is not recognizing divorces made in the U.S. or how the country treats victims of domestic abuse. You still have been successful in separating the family. And here, I mean, it seems that she's arguing she experienced a sudden change in her personal circumstances when Mr. Lopez, her ex-husband, returned to Guatemala. She became alarmed by the news that her ex-husband was actively looking for her and threatening her. So she filed a motion to reopen her divorce proceedings based on change in entry conditions, correct? Correct. And if she filed a motion, that would mean the EPIA took issue with her memo because it seemed to be speculative, didn't have all the support that they would have liked to receive. So she went back and addressed all those concerns. She corrected the deficiencies, from what I can see. Filed a new motion supplemented with a more thorough declaration, force-formed an affidavit for failing coverage in Guatemala, a psychiatric report, and a document chronicling the inadequate protection from domestic abuse in Guatemala. And I just wanted to hear from you because it seems, instead of grappling with this new evidence, the BIA disposed of Ms. Lopez's motion in a single paragraph relying on the same reasoning that it had relied on previously. It didn't seem to consider the critical pieces of evidence. And I was just wondering, isn't that an abuse of discretion based on the record as a whole here? And I wanted to give you a chance because we're here sort of as a safety valve to ensure that the new evidence is properly considered. And give me your best argument as to why it was. My best argument is in the 2010 decision, the board specifically noted that she has not been harmed by her ex-husband since 1993. And in her new motion to reopen, she did not address her safety since that time. And so she did, and her personal circumstances have changed. Now he was with her at the time previously, but now he's back in Guatemala and he's making these threats. Right. And the board considered that in the first motion to reopen. And part of its reasoning was you fail because you have not been harmed since 1993. And in her second motion to reopen, she doesn't. If she goes back to Guatemala, how can you say that there's not a real possibility she will be harmed in light of everything she put in the affidavits and in her declarations and the psychiatric or everything and the conditions? I would say that the actions of her abusers speak louder than his words. And he's threatened her forever. And yet they actually do it. And since she has separated from him, he has a partner. And she separated from him. And because she has lived so long apart from him without any abuse, the board was in it. There's evidence in the record where he says, you know, I still consider her my wife, and if she comes back here, I'm going to kill her. Right. Okay. Thank you. Thank you. I would like to point the court to the specific citations in the country conditions that establishes that violence in Guatemala increases since the time of the original hearing to the time of the filing. Increase in numbers of violence can be seen on page 305 of the record, 362 of the record, 68 of the record, 94 of the record, and 67 and 68 of the record, all showing that the violence has increased steadily over time in range of economic proportions. The increased brutality can be seen on page 305, 310, and 82 of the certified administrative record. Thank you. Addressing the court's question to the government counsel about the specific threat made against her, I just would like to correct, according to the court, to Ms. Rose's daughter's declaration filed within the second supplemental motion to reopen. This is the specific threat made against her. This was the changing country condition. This showed that things changed from 16 years of new life here in the United States. He returned to Guatemala. She didn't file the motion in 2004, 2005, or 2006 to sign more staying conditions in Guatemala because she then received a threat of harm. When he got back to Guatemala, he made a specific threat against her. The entire record, we ask that the court refers to the court's finding that Ms. Rose did not submit material evidence because she did submit evidence that is specifically related to her claim. That was qualitatively different than the evidence previously submitted. We ask that the court refers to the court's finding that Ms. Rose did not establish a gravitation case if she has an objectively reasonable, well-founded fear of future persecution because she did submit evidence to establish a reasonable likelihood that she has well-founded fear. She submitted applications and other evidence. If Ms. Rose would establish her eligibility for relief, it's evidence that indicates it would be worthwhile to develop these issues to the judiciary hearing. Thank you, Judge. The case is currently being submitted for decision. And we'll proceed to the next case on the oral argument calendar, which is Soraya v. Sessions.
judges: Thomas, Murguia, Baylson